# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA     :
                          :     No. 3:25-CR-199
        **v.**             :
                          :     (Judge *Mariani*     )
**JOSEPH KAMINSKI,**            :
                          :
         **Defendant.**     :     (Electronically filed)

## I N D I C T M E N T

THE GRAND JURY CHARGES:

### COUNTS 1 THROUGH 13
18 U.S.C. § 1343
(Wire Fraud)

**FILED
SCRANTON**

JUL 2 9 2025

PER_____ *JKU*
DEPUTY CLERK

At times material to the Indictment:

## I.   Relevant Individuals and Entities

1.   Defendant JOSEPH KAMINSKI was a resident of Nanticoke, in the Middle District of Pennsylvania. JOSEPH KAMINSKI was the owner and operator of Prominent Monument Works ("PMW").

2.   The United States Small Business Administration ("SBA") was an executive branch agency of the United States government that

1

provided support to entrepreneurs and small businesses. The mission of the SBA included maintaining and strengthening the nation's economy by enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters. As part of those efforts, the SBA enabled and provided for loans with government-backed guarantees to small business owners through financial institutions and other lenders. The SBA also provided direct loans.

3.     Prominent Monument Works ("PMW") was a business owned and operated by JOSEPH KAMINSKI from his personal residence in Nanticoke, PA. In communications with government agencies, including the SBA, JOSEPH KAMINSKI variously described the main business activity of PMW to be: (1) the sale of cemetery monuments, grave markers, and headstones; (2) equipment sales; (3) the sale of used commercial equipment, predominantly semi-trailers; (4) motor vehicle sales; and (5) miscellaneous services. Likewise, in communications with the SBA, JOSEPH KAMINSKI variously characterized the

2

business structure of PMW as being a sole proprietorship, a general partnership, and a qualified joint venture.

4.    Individual 1 was a resident of Nanticoke, PA and a full-time, salaried employee for a regional nonprofit health system.   In applications made to and in other communications with the SBA, JOSEPH KAMINSKI variously described Individual 1 as having no ownership stake in PMW, as being the 5% owner of PMW, as being the 40% owner of PMW, and as being the 81% owner of PMW. Additionally, JOSEPH KAMINSKI at times represented to the SBA that Individual 1 was the "Secretary/Treasurer" of PMW.   Finally, JOSEPH KAMINSKI represented to the SBA that Individual 1 was also the 100% owner of a used item reseller business that JOSEPH KAMINSKI claimed was an entirely separate entity from PMW.

## II.    The Economic Injury Disaster Loan Program

5.    The Economic Injury Disaster Loan ("EIDL") program was an existing disaster relief program expanded by the Coronavirus Aid, Relief, and Economic Security ("CARES") Act of March 2020.   The EIDL program was administered by the SBA and provided low-interest

3

financing (including forgivable advances of up to $10,000, known as the EIDL "Targeted Advance") to small businesses and other eligible entities experiencing substantial financial disruption resulting from the COVID-19 pandemic.

6.    To obtain an EIDL, a qualifying business was required to submit an application directly to the SBA and provide information about the business's operations, such as the number of employees, gross revenues for the 12-month period preceding the disaster, and cost of goods sold in the 12-month period preceding the disaster.    In the case of EIDLs for COVID-19 relief, the 12-month period was the period from January 31, 2019, to January 31, 2020.    The applicant was also required to certify that all of the information in the application was true and correct to the best of the applicant's knowledge.

7.    EIDL applications were submitted directly to the SBA via an online portal, and processed by the agency with support from a government contractor.    The amount of the loan, if the application was approved, was determined based, in part, on the information provided by the applicant about employment, revenue, and cost of goods sold.

4

Any funds issued under an EIDL were issued directly by the United States Treasury.

8.     EIDL applications were received in and processed using computer servers located in the states of Iowa, Virginia, and Washington.   EIDL disbursement payments were initiated by the SBA using computer servers located in the state of Colorado, which transmitted the payment information to the United States Treasury using computer servers located in the state of Virginia.

9.     EIDL proceeds could only be used to pay fixed debts, payroll, accounts payable and other bills that could have been paid had the disaster not occurred; however, such loan proceeds were not intended to replace lost sales or profits or for expansion of a business.

## III.   Pandemic Unemployment Assistance Benefits

10.     The CARES Act also created the Pandemic Unemployment Assistance (PUA) program, which provided unemployment benefits to individuals not eligible for regular unemployment compensation or extended unemployment benefits.

11.    The PUA program was administered by the various states, including the Commonwealth of Pennsylvania, but its benefits were funded in part by the federal government.   In Pennsylvania, the Department of Labor and Industry (PA DOL), headquartered in Harrisburg, PA, within the Middle District of Pennsylvania, administered the PUA program.

12.    A claim for PUA benefits was required to be submitted online through the PUA website maintained by the PA DOL.   The applicant was required to enter personal identification information, including name, date of birth, social security number, email address, telephone number, and a physical address.   An applicant was also required to answer a series of questions that enabled the PA DOL to determine the applicant's eligibility and payment amount.

13.    An applicant was only eligible to receive PUA benefits if he or she was unemployed or partially unemployed for reasons related to the COVID-19 pandemic, and was available to work.   Self-employed individuals, that is, individuals whose primary reliance for income was on the performance of services in the individual's own business, were

potentially eligible for benefits, but only if the business had experienced a significant diminution of services because of the COVID-19 public health emergency.   All applicants were required to certify, under penalty of perjury, that they were able to go to work each day and that, if offered a job, applicants were required to accept it.   Applicants were also required to read and to understand the PUA Compensation Handbook, which stated that any earnings were required to be reported for each week that a person worked.

14.    If the PA DOL approved an application for PUA benefits, the benefits recipient received the funds in the form of checks, electronic funds transfers, or debit cards.   To combat fraud in the PUA program, beginning in June 2020, PUA benefits were issued via prepaid U.S. Bank Visa debit cards and mailed via the United States Postal Service to the residential address on the PUA application.

15.    The recipient of the PUA benefits received a unique Personal Identification Number to access the PUA internet portal through which the recipient was required to certify his or her unemployment status on a weekly basis.   PUA benefits payments were based on a seven-day

period, from Sunday through Saturday.   Thus, in order to continue to receive PUA benefits after the initial application, the recipient was required to certify every seven days that he or she: (1) was ready, willing and able to work each day; (2) was seeking full time employment; (3) did not refuse any jobs or referrals; and (4) had reported any full or part time work during the week and any earnings received.

## IV.    Objects of the Scheme to Defraud

16.    The objects of the scheme were for JOSEPH KAMINSKI to unlawfully enrich himself by fraudulently obtaining and attempting to obtain EIDL and PUA funds through misrepresentations and false documentation and, in the case of the EIDL funds, to use those funds for unauthorized, personal, non-business uses.

## V.    Manner and Means of the Scheme to Defraud

17.    It was part of the scheme and artifice to defraud that, from in or about April 2020, through in or about May 2022, JOSEPH KAMINSKI submitted and caused to be submitted to the SBA, by means of the internet and interstate wires, several materially

conflicting applications (or application versions) for EIDLs for Prominent Monument Works ("PMW").

18.    It was further part of the scheme and artifice to defraud that JOSEPH KAMINSKI made material misrepresentations in the several EIDL applications or application versions for PMW that he submitted to the SBA, as well as in emails and other supplementary communications with the SBA.

19.    For example, in the first EIDL application for PMW submitted on April 2, 2020, JOSEPH KAMINSKI falsely stated that in 2019 PMW had gross revenues of $186,000.00 and that the cost of goods sold was $92,000.00 when, in fact, no business operated by JOSEPH KAMINSKI in 2018 or 2019 had gross receipts or costs of goods even close to those figures.

20.    As further example, in the second EIDL application for PMW submitted on April 4, 2020, JOSEPH KAMINSKI likewise falsely stated that in 2019 PMW had gross receipts of $186,000.00 and that the cost of goods sold was $92,000.00.   In this second EIDL application, JOSEPH KAMINSKI also falsely inflated the scope of the business by

claiming that PMW had 10 employees when, in fact, no business

operated by JOSEPH KAMINSKI in 2019 had more than 1 employee.

21.    As further example, on the third EIDL application for PMW

submitted on January 29, 2021, in response to the question "Are you

presently subject to an indictment, criminal information, arraignment,

or other means by which formal criminal charges are brought in any

jurisdiction?", JOSEPH KAMINSKI falsely stated "No".   In fact, at the

time of this application, JOSEPH KAMINSKI knew that he was the

subject of a pending criminal charge brought by criminal complaint in

Northampton County, PA, having become aware of this charge, at

latest, on July 31, 2020, the date of his initial court appearance on the

charge.

22.    It was further part of the scheme and artifice to defraud

that, after JOSEPH KAMINSKI became aware both that his first two

EIDL applications for PMW were declined by the SBA due to his

unsatisfactory credit history, and that he was the subject of a pending

criminal charge, on later EIDL applications, JOSEPH KAMINSKI

began to list Individual 1, who had superior credit and was not the

10

subject of a pending criminal charge, but who also had no meaningful

involvement in the business activity of PMW, as a primary contact for

and part owner of PMW, as a pretext to withhold and obscure

problematic information about his own background from the SBA and to

thereby increase the likelihood that later loan applications would be

approved and funded.

23.    For example, on the third EIDL application submitted for

PMW on January 29, 2021, JOSEPH KAMINSKI described PMW,

previously listed as a sole proprietorship, as a general partnership with

Individual 1.    In the section requesting PMW's "Individual Owners,"

JOSEPH KAMINSKI listed Individual 1 as "Owner 1," not himself, who

he listed as "Owner 2."    In the sections seeking "ownership

percentage," JOSEPH KAMINSKI represented that Individual 1 was

the 40% owner of PMW, while he was the 60% owner of PMW.

However, for the fields seeking Individual 1's contact information,

JOSEPH KAMINSKI provided his phone number and one of his

personal email addresses, not Individual 1's direct contact information.

24.    As further example, after the above-described third EIDL

application was likewise declined by the SBA, JOSEPH KAMINSKI

submitted a fourth EIDL application for PMW, this one an SBA Form

3501 paper application that JOSEPH KAMINSKI signed and dated on

May 4, 2021 and which was processed by the SBA on May 8, 2021.   On

this application, JOSEPH KAMINSKI once again described PMW as a

general partnership.   However, in the section seeking the names of the

"owners," JOSEPH KAMINSKI listed only Individual 1, who he now

represented was the 81% owner of PMW.   He did not list himself as an

owner/general partner at all.   Additionally, despite the fact that

Individual 1 had no access to PMW's business bank account, JOSEPH

KAMINSKI indicated that Individual 1 was the "Secretary/Treasurer"

of PMW.   Finally, in response to the question "Regarding you or any

owner listed on this application, are you presently subject to an

indictment, criminal information, arraignment, or other means by

which formal criminal charges are brought in any jurisdiction?"

JOSEPH KAMINSKI falsely answered "No", when, as noted, on at

latest July 31, 2020, JOSEPH KAMINSKI became aware that he had

been charged by criminal complaint with a criminal offense in

Northampton County, Pennsylvania, and this remained an active, pending charge at the time of this application.

25.    It was further part of the scheme and artifice to defraud that, whereas on the first two EIDL applications for PMW, JOSEPH KAMINSKI represented that PMW had been in business since 1999, on the third and subsequent versions of the EIDL application for PMW, as a means to avoid producing federal tax returns for 2019 and earlier, which he could not produce, JOSEPH KAMINSKI falsely claimed that PMW was an entirely new business started in January 2020.   In fact, PMW was simply a continuation of and an amalgamation of JOSEPH KAMINSKI's already ongoing business activities, as evidenced by the fact that JOSEPH KAMINSKI had used the name "Prominent" and "Prominent Monument Works" in connection with business activity, including the purchase and resale of trailers and other used equipment, and in connection with the sale of cemetery monuments, well before January 2020.

26.    It was further part of the scheme and artifice to defraud that, in connection with the fourth EIDL application for PMW, when

13

asked by the SBA in 2021 to provide revenue data to be used to project what PMW's economic activity for 2020 would have been absent the COVID-19 pandemic, which in turn would serve as the basis for the amount of any loan, JOSEPH KAMINSKI provided intentionally inaccurate revenue data for 2020 to create the misimpression that PMW's sales were more significantly impacted by the pandemic than was the case.   JOSEPH KAMINSKI did this via a 2020 Profit and Loss Statement for PMW, submitted on June 11, 2021, that claimed that PMW had no gross receipts for each of the months of March through November 2020.   In fact, contrary to these 2020 month-by-month sales figures provided by JOSEPH KAMINSKI to the SBA, PMW had sales throughout 2020, did not have a steep decrease in sales starting in March 2020 with the onset of the pandemic, and did not have a steep recovery in sales at the very end of 2020.

27.   It was further part of the scheme and artifice to defraud that, in misrepresenting PMW's 2020 sales in the above fashion, JOSEPH KAMINSKI also created the misimpression that PMW was more successful during those months outside the height of the pandemic

than was the case.

28.    It was further part of the scheme and artifice to defraud that, again in connection with the fourth EIDL application for PMW, when asked to project what PMW's overall economic activity for 2020 would have been absent the COVID-19 pandemic, after presenting the manipulated data as described above, JOSEPH KAMINSKI intentionally and grossly overstated, overestimated and over-projected that, absent the COVID-19 pandemic, PMW would have had $485,000.00 in revenues in 2020.   No business operated by JOSEPH KAMINSKI in the immediately preceding non-pandemic years of 2018 and 2019 had revenues anywhere near that figure.

29.    It was further part of the scheme and artifice to defraud that, in connection with the fourth EIDL application, on or about July 30, 2021, JOSEPH KAMINSKI submitted to the SBA an EIDL Loan Authorization and Agreement on which he intentionally falsely certified that he would use any and all of the EIDL funds to be awarded solely for business purposes and to alleviate the economic injury caused to the business by the COVID-19 pandemic.

15

30.    It was further part of the scheme and artifice to defraud that, as a result of the above material misrepresentations, and others, the SBA funded the fourth EIDL application for PMW, and on August 4, 2021, the SBA wired $499,900.00 in EIDL pandemic funds to a business bank account for PMW at PNC Bank over which JOSEPH KAMINSKI had exclusive control.

31.    It was further part of the scheme and artifice to defraud that, despite certifying that he would use all of the EIDL funds to be awarded solely for business purposes and to alleviate the economic injury caused to the business by the COVID-19 pandemic, immediately upon receiving the funding, JOSEPH KAMINSKI began to spend large portions of the $499,900.00 in pandemic funding on purely personal and plainly unauthorized uses.

32.    For example, on diverse dates from August 5, 2021 to October 25, 2021, JOSEPH KAMINSKI transferred a total of approximately $13,524.00 in EIDL funds from PMW's business bank account to the account of Female 1, an adult female who he had met on a so-called "sugar dating" website, that is, a dating website that pairs

16

older male "sugar daddies" with younger female "sugar babies," with both parties seeking an arrangement whereby the "sugar baby" receives money and other gifts from the "sugar daddy" in exchange for her company and companionship.   JOSEPH KAMINSKI was known on the aforesaid website by his username, "SweetDaddyDom."

33.    As further example, on or about August 20, 2021, JOSEPH KAMINSKI spent $3,200.00 in EIDL funds on a downpayment for a 2016 Ford Fusion for Female 1.   In connection with the same transaction, as a means to assist Female 1 in obtaining financing for the remainder of the purchase price of the vehicle, JOSEPH KAMINSKI falsely represented to the lender that Female 1 was an employee of PMW and presented false documentation purporting the same.

34.    As further example, on or about August 17, 2021, JOSEPH KAMINSKI wired $49,000.00 in EIDL funds from PMW's bank account at PNC Bank to the bank account of an entity called Sudds 1 LLC at Wells Fargo Bank for the purchase of washing machines and other laundry equipment, as part of a failed effort to start up a laundromat business that was completely unrelated to PMW.

35.    As further example, on or about August 23, 2021, JOSEPH KAMINSKI wired $11,000.00 in EIDL funds from PMW's bank account at PNC Bank to the TD Bank account of the owner of the above described laundry equipment as further payment for the purchase of washing machines and related equipment, as part of the same effort to start up a laundromat business that was completely unrelated to PMW.

36.    As further example, on or about September 3, 2021, using EIDL funds, JOSEPH KAMINSKI purchased a 2021 Dodge RAM 2500 pick-up truck for $21,685.00, an ineligible fixed asset, paying with a cashier's check drawn on PMW's business bank account.

37.    As further example, on or about August 30, 2021, JOSEPH KAMINSKI spent $4,350.00 in EIDL funds on roofing and gutter work on his private residence in Nanticoke, Pennsylvania.

38.    As further example, on or about September 20, 2021, JOSEPH KAMINSKI spent an additional $4,350.00 in EIDL funds on roofing and gutter work on his private residence in Nanticoke, Pennsylvania.

39.    As further example, on or about September 22, 2021, JOSEPH KAMINSKI spent $15,000.00 in EIDL funds to pay down delinquent real estate taxes on a bowling alley in Shamokin, PA in order to facilitate a friend's purchase of the bowling alley, again paying by cashier's check drawn on PMW's business bank account.

40.    As further example, on or about December 6, 2021, JOSEPH KAMINSKI spent $17,538 in EIDL funds on the purchase of a 2016 Jeep Wrangler for the wife of a friend.    JOSEPH KAMINSKI's expressly stated purpose in doing so was to "flip" EIDL funds.

41.    It was further part of the scheme and artifice to defraud that, beginning on or about September 9, 2021, JOSEPH KAMINSKI initiated a process of seeking, through a loan modification request to the SBA, an increase in EIDL funding for PMW over and above the $499,900.00 already obtained.    In connection with this loan modification request, JOSEPH KAMINSKI repeated many of the false claims that he previously made to the SBA in prior loan applications and made additional false claims.

42.    For example, on or about April 6, 2022, JOSEPH

KAMINSKI submitted to the SBA a document in the nature of a business plan in which he falsely claimed that the initial $499,900.00 in EIDL funds was used to purchase equipment inventory when in fact, as set forth above, JOSEPH KAMINSKI spent significant EIDL funds on unauthorized uses.

43.   As further example, also on or about April 6, 2022, JOSEPH KAMINSKI submitted to the SBA an updated projection of what PMW's economic activity would have been in 2020 absent the COVID-19 pandemic, which would serve as the basis for any increase in EIDL funding that PMW would receive through the loan modification request process.   As before, JOSEPH KAMINSKI intentionally overstated the projection and, in fact, did so to an even greater degree than previously, now projecting that, absent the COVID-19 pandemic, PMW would have had $570,000.00 in revenues in 2020.

44.   As further example, also on or about April 6, 2022, in response to a request from the SBA for PMW's 2020 federal tax filing, JOSEPH KAMINSKI provided to the SBA a false document, signed and dated April 2, 2022, that JOSEPH KAMINSKI held out to the SBA to

be a duly filed Federal Tax Return (Form 1040) that included the duly filed 2020 Schedule C Profit or Loss from Business for PMW.   In fact, this document, which contained material misrepresentations to support the falsehoods contained on prior documents presented to the SBA, was not actually filed with the Internal Revenue Service (IRS).   Moreover, in an email communication sent by JOSEPH KAMINSKI to the SBA on or about April 13, 2022, JOSEPH KAMINSKI expressly represented that this false 2020 Federal Tax Return was in fact a true, filed return, stating that he had "uploaded the 2020 tax return showing Prominent Monument Works on schedule C" to the SBA document portal, explaining that he and his spouse had "*opted to file* as a qualified joint venture" as opposed to treating PMW as a general partnership for tax purposes.

45.   It was further part of the scheme and artifice to defraud that, in addition to making the above material misrepresentations to the SBA, as part of his efforts to obtain additional EIDL funding for PMW, JOSEPH KAMINSKI also made similar material misrepresentations to staff of a member of the United States Congress.

As a result of these false claims, congressional staff advocated on JOSEPH KAMINSKI's behalf to SBA personnel and this, in turn, prompted the SBA to "reactivate" and ultimately reconsider JOSEPH KAMINSKI's request for additional funding.

46.    It was further part of the scheme and artifice to defraud that, again in connection with his request for a loan modification seeking additional EIDL funding for PMW, on or about April 24, 2022, JOSEPH KAMINSKI submitted and caused to be submitted to the SBA an Amended EIDL Loan Authorization and Agreement on which he again intentionally and falsely certified that he would use any and all of the EIDL funds to be awarded solely for business purposes and to alleviate the economic injury caused to the business by the COVID-19 pandemic, despite knowing that he had used the prior EIDL funds for impermissible purposes.

47.    It was further part of the scheme and artifice to defraud that, as a result of the above material misrepresentations, and others, made by JOSEPH KAMINSKI in connection with his loan modification request for PMW, the SBA modified the EIDL for PMW upward and, on

or about April 28, 2022, the SBA wired an additional $300,000.00 in
EIDL pandemic funds to a business bank account for PMW at PNC
Bank over which JOSEPH KAMINSKI had exclusive control.

48.    It was further part of the scheme and artifice to defraud
that, despite certifying that he would use all of the EIDL funds to be
awarded solely for business purposes and to alleviate the economic
injury caused to the business by the COVID-19 pandemic, immediately
upon receiving the additional funding, JOSEPH KAMINSKI again
began to spend portions of the $300,000.00 in EIDL funding on plainly
unauthorized uses.

49.    For example, on diverse dates from April 28, 2022 to June 8,
2022, JOSEPH KAMINSKI transferred a total of approximately
$11,320.00 in EIDL funds from PMW's business bank account to
Female 1, including two payments totaling $900.00 on the day after he
received the supplemental EIDL funding.

50.    As further example, on diverse dates from April 28, 2022 to
June 6, 2022, JOSEPH KAMINSKI transferred a total of approximately
$3,310.00 in EIDL funds to Female 2, another adult female "sugar

baby" whom JOSEPH KAMINSKI had met on a "sugar dating" website, including a $300.00 payment on the day after he received the supplemental EIDL funding.

51.    As further example, on or about May 27, 2022, JOSEPH KAMINSKI executed a cashier's check in the amount of $12,500.00 drawn on PMW's business bank account as payment to purchase land located at 1380 Tiago Street, Coal Township, PA to further assist in a friend's purchase of a bowling alley on the site.

52.    As further example, on or about July 1, 2022, utilizing EIDL funds, JOSEPH KAMINSKI purchased real property at 842 E. Main Street in Nanticoke, Pennsylvania for approximately $ 95,000.00 with the intention of utilizing the residence as a personal rental property. Although he used funds from PMW's business bank account, JOSEPH KAMINSKI purchased and titled the residence in his own name, placing his name on the deed.   On March 1, 2022, during the process of purchasing this residence, JOSEPH KAMINSKI provided to the seller as proof of funds a false and altered bank statement that purported to show that for the period ending February 28, 2022, JOSEPH

KAMINSKI had $ 271,288.33 in a bank account when, in fact, the PMW

business bank account in question had only $ 3,765.77 in funds on

February 28, 2022.   JOSEPH KAMINSKI did this in anticipation of

receiving the supplemental EIDL funding and using a portion of it to

purchase this residence as a personal asset.

53.   It was further part of the scheme and artifice to defraud

that, in addition to actively pursuing general EIDL funding for PMW as

set forth in detail above, beginning at least as early as June 2020 and

continuing through June 2021, JOSEPH KAMINSKI applied to the

SBA for the so-called EIDL "Targeted Advance" of $10,000.00 for PMW.

54.   It was further part of the scheme and artifice to defraud

that, in the course of seeking the EIDL Targeted Advance for PMW, on

or about March 29, 2021, JOSEPH KAMINSKI submitted and caused to

be submitted to the SBA, by means of the internet and interstate wires,

an application for the EIDL Targeted Advance.

55.   It was further part of the scheme and artifice to defraud

that, in the course of seeking the EIDL Targeted Advance for PMW,

JOSEPH KAMINSKI made material misrepresentation both in the

aforementioned application and in supplementary email communications to the SBA.

56.    For example, in an email to SBA personnel on March 25, 2021, JOSEPH KAMINSKI falsely claimed that PMW was a business that "started January 1, 2020" and so therefore "require[d] 'new entity' calculation methods," when in fact the business did exist prior to January 2020, in order to be excused from the standard requirement of having to provide historical tax return information.

57.    As further example, in the application itself, JOSEPH KAMINSKI not only repeated the above false claim that PMW was a business established on January 1, 2020, but also falsely claimed that PMW had no monthly gross receipts for each of the months of March through November 2020, when in fact PMW had gross receipts in those months, in order to create the misimpression that PMW's sales were more significantly impacted by the pandemic than was the case.

58.    It was further part of the scheme and artifice to defraud that, as a result of the above material misrepresentations, and others, the SBA approved PMW for the EIDL Targeted Advance, and on June

26

2, 2021, the SBA wired $10,000.00 in EIDL funds to a business bank

account for PMW at PNC Bank over which JOSEPH KAMINSKI had

exclusive control.

59.    It was further part of the scheme and artifice to defraud

that, in addition to pursuing EIDL funds for the business known as

Prominent Monument Works or "PMW" as set forth in detail above, on

or about June 16, 2021, JOSEPH KAMINSKI submitted and caused to

be submitted to the SBA, by means of the internet and interstate wires,

an EIDL application in the name of "Individual 1" for a second used

item resale business that he operated as a sole proprietorship in 2019

and that he falsely claimed was separate and distinct from PMW.

60.    It was further part of the scheme and artifice to defraud that

JOSEPH KAMINSKI made and caused to be made material

misrepresentations in the EIDL application filed with the SBA for this

alleged second business, as well as in supplementary communications

with the SBA.

61.    For example, JOSEPH KAMINSKI falsely claimed: (1) that

he transferred ownership of this alleged second business to Individual 1

27

in January 2020; (2) that Individual 1 was the "100%" owner of this alleged second business; and (3) that this alleged second business was entirely separate and distinct from PMW and therefore capable of qualifying for its own, additional EIDL funding.   As in the case of the latter EIDL applications for PMW, although JOSEPH KAMINSKI listed Individual 1 as the owner of this alleged second business, in the sections seeking Individual 1's contact information JOSEPH KAMINSKI provided his own phone number and one of his personal email addresses.   Also, all supplementary communications to the SBA concerning the status of this loan application were made by JOSEPH KAMINSKI, not by Individual 1.   Finally, again as in the case of the latter EIDL applications for PMW, JOSEPH KAMINSKI made these false claims about Individual 1's connection to this alleged second business after his poor credit score kept him from qualifying for loans on his own and after he learned that he was the subject of a pending criminal charge.

62.   It was further part of the scheme and artifice to defraud that, in connection with this EIDL application for this alleged second

business, on or about October 6, 2021, JOSEPH KAMINSKI submitted and caused to be submitted to the SBA an EIDL Loan Authorization and Agreement which certified that any and all of the EIDL funds awarded to the business would be used solely for business purposes and to alleviate the economic injury caused to the business by the COVID-19 pandemic.

63.    It was further part of the scheme and artifice to defraud that, as a result of the above material misrepresentations, and others, the SBA funded the EIDL application for the alleged second business, and on October 19, 2021, the SBA wired $56,300.00 in EIDL pandemic funds to a bank account at Cross Valley Federal Credit Union in the name of Individual 1.

64.    It was further part of the scheme and artifice to defraud that, despite the certification that all of the EIDL funds awarded to the alleged second business would be used solely for business purposes and to alleviate the economic injury caused to the business by the COVID-19 pandemic, in the months that followed, the majority of the awarded EIDL funds were transferred from the aforesaid Cross Valley Federal

29

Credit Union account in Individual 1's name to a Cross Valley Federal Credit Union account in the name of JOSEPH KAMINSKI and under his exclusive control. The funds were then spent by JOSEPH KAMINSKI either on purely personal, non-business uses or channeled by JOSEPH KAMINSKI into the PMW business bank account at PNC Bank and utilized to buy equipment for PMW.

65. For example, first on February 3, 2022, and then again on February 10, 2022, $2,000.00 in EIDL funds were moved from Individual 1's Cross Valley Federal Credit Union account to the Cross Valley Federal Credit Union account controlled by JOSEPH KAMINSKI. In each instance, after receiving the $2,000.00 deposits into his account, JOSEPH KAMINSKI funneled the entire $2000.00 to Female 1, who he had met on a "sugar dating" website.

66. As further example, on or about March 8, 2022, $30,000.00 in EIDL funds were moved from Individual 1's Cross Valley Federal Credit Union account to the Cross Valley Federal Credit Union account controlled by JOSEPH KAMINSKI. On the same day, JOSEPH KAMINSKI obtained a cashier's check for $30,000.00 as drawn on his

Cross Valley Federal Credit Union account and deposited the cashier's check into PMW's business bank account at PNC Bank.   The following day, JOSEPH KAMINSKI paid $30,000.00 to purchase equipment to be used in connection with PMW's business activity.

67.   It was further part of the scheme and artifice to defraud that, in or about February 2024, when the time came to begin to repay the above described $800,000.00 EIDL loan to PMW, by making the agreed-upon monthly payments of $4,002.00 to the SBA, JOSEPH KAMINSKI intentionally failed to make even a single partial payment, resulting in the loan having to be "charged-off" in or about August 2024.

68.   It was further part of the scheme and artifice to defraud that, in addition to submitting the false and fraudulent EIDL loan applications as set forth in detail above, from approximately April 2020 to September 2021, JOSEPH KAMINSKI also submitted and caused to be submitted to the PA DOL applications for Pandemic Unemployment Assistance (PUA) that contained material misrepresentations.

69.   For example, on both an initial application for PUA benefits submitted on April 18, 2020, and on an additional claim application for

PUA benefits submitted on January 23, 2021, JOSEPH KAMINSKI

falsely certified to the PA DOL that he was unemployed as a direct

result of the COVID-19 pandemic and that his business was closed due

to the COVID-19 pandemic when, in fact, JOSEPH KAMINSKI

continued to operate PMW throughout 2020 and 2021.

70.    It was further part of the scheme and artifice to defraud that

JOSEPH KAMINSKI also submitted and caused to be submitted to the

PA DOL a series of weekly certifications for PUA employment benefits

(submitted for approximately 77 weeks from the week beginning March

8, 2020 to the week beginning August 29, 2021) containing material

misrepresentations.

71.    For example, on the vast majority of these weekly

certifications to the PA DOL, JOSEPH KAMINSKI falsely claimed that

his business was entirely closed as a result of the COVID-19 pandemic

and that he did not work full or part time or earn money during the

weeks in question when, in fact, JOSEPH KAMINSKI continued to

operate PMW, sell trailers and other items, and earn money from sales

during these weeks.   Moreover, the claims of JOSEPH KAMINSKI in

this regard were also inconsistent with and directly contradicted by documentation JOSEPH KAMINSKI submitted to the SBA in connection with PMW's EIDL loan applications, such as a 2021 Profit and Loss Statement in which JOSEPH KAMINSKI represented that PMW had gross and net income throughout 2021, including gross income of $28,383.00, $44,601.00, and $25,495.00 in February, March and June 2021, respectively.

72.    It was further part of the scheme and artifice to defraud that, as a result of the above material misrepresentations and others made by JOSEPH KAMINSKI on applications and weekly certifications for PUA unemployment benefits, from approximately May 12, 2020 to December 31, 2021, the PA DOL paid out to JOSEPH KAMINSKI approximately $43,275.00 in weekly PUA unemployment benefits to which he was not entitled.

73.    It was further part of the scheme and artifice to defraud that all told, from in or about April 2020 to in or about April 2022, JOSEPH KAMINSKI obtained by material misrepresentation approximately $909,500.00 in EIDL and PUA pandemic-related funds to which he was

not entitled.

## VI.    Statutory Allegation

74.    From in or about January 2020, to in or about January 2025, in the Middle District of Pennsylvania, and elsewhere, the defendant,

### JOSEPH KAMINSKI

with the intent to defraud, knowingly devised and intended to devise the above-described scheme and artifice to defraud, and to obtain money and property from the SBA and the PA DOL, by means of materially false and fraudulent pretenses, representations, and promises.

75.    For the purpose of executing, advancing, furthering, and carrying out the above-described scheme and artifice to defraud, and attempting to do so, the defendant knowingly transmitted and caused to be transmitted by means of wire communication in interstate commerce, the following writings, signs, signals, pictures, and sounds, with each being a separate count:

| Count | Approximate Date of Wire | Description |
|---|---|---|
| 1 | April 2, 2020 | A fraudulent EIDL application for PMW, submitted via the internet and interstate wires to the SBA, containing material misrepresentations, including that in 2019 PMW had gross revenues of $186,000 and a cost of goods sold of $92,000, when it did not. |
| 2 | April 4, 2020 | A fraudulent EIDL application for PMW, submitted by the internet and interstate wires to the SBA, containing material misrepresentations, including that in 2019 PMW had gross revenues of $186,000 and 10 employees, when it did not. |
| 3 | January 23, 2021 | A fraudulent PUA application, submitted by the internet and interstate wires to the PA DOL, containing material misrepresentations, including that JOSEPH KAMINSKI had closed his business due to COVID-19 when JOSEPH KAMINSKI had not closed his business and continued to work and earn money during the pandemic. |
| 4 | January 29, 2021 | A fraudulent EIDL application for PMW, submitted by the internet and interstate wires to the SBA, containing material misrepresentations, including claims that PMW was a new business started in January 2020, when it was not, and that JOSEPH KAMINSKI was not presently subject to a criminal charge, when he was. |
| 5 | March 29, 2021 | A fraudulent EIDL Targeted Advance application for PMW, submitted by the internet and interstate wires to the SBA, containing material misrepresentations, including that PMW had no gross receipts (income) for March through November 2020, when PMW had gross receipts (income) during one and more of those months. |
| 6 | May 4, 2021 | An email sent via the internet and interstate wires, from JOSEPH KAMINSKI (joeemail53@gmail.com) |

| | | to the SBA, attaching a fraudulent Form 3501 EIDL paper application for PMW, containing material misrepresentations, including claims that Individual 1 was the 81% owner of PMW, when Individual 1 was not, and that neither the signatory nor any PMW owner was presently subject to a criminal charge, when he was. |
|---|---|---|
| 7 | June 11, 2021 | An email sent via the internet and interstate wires, from JOSEPH KAMINSKI (joeemail53@gmail.com) to the SBA, attaching a false 2020 Profit and Loss Statement for PMW, containing material misrepresentations, including that PMW had no gross receipts (income) for the months of March through November 2020, when PMW had gross receipts (income) in one and more of those months. |
| 8 | June 16, 2021 | A fraudulent EIDL application for the alleged second business in the name of Individual 1, submitted by the internet and interstate wires to the SBA, containing material misrepresentations, including that this alleged second business was an entirely separate and distinct business from PMW, when it was not. |
| 9 | July 30, 2021 | A fraudulent EIDL Loan Authorization and Agreement for PMW, submitted by the internet and interstate wires to the SBA, containing material misrepresentations, including the false certification by JOSEPH KAMINSKI that he would use all funds awarded for business purposes and to alleviate the injury caused to PMW by COVID-19. |
| 10 | October 6, 2021 | A fraudulent EIDL Loan Authorization and Agreement for the alleged second business in the name of Individual 1, submitted by the internet and interstate wires to the SBA, containing material misrepresentations, including the false certification that all funds awarded would be used for business |

36

| | | |
|---|---|---|
| | | purposes and to alleviate the injury caused by COVID-19. |
| 11 | April 6, 2022 | An email sent via the internet and interstate wires, from JOSEPH KAMINSKI (joeemail53@gmail.com) to the SBA, attaching a "Business Plan" for PMW, containing material misrepresentations, including the claim that JOSEPH KAMINSKI had spent the first $499,900.00 in EIDL funds he received on business purchases, when he had spent some of these funds on personal, non-business purchases. |
| 12 | April 13, 2022 | An email sent via the internet and interstate wires, from JOSEPH KAMINSKI (joeemail53@gmail.com) to the SBA, in which JOSEPH KAMINSKI falsely represented that the 2020 Federal Tax Return (Form 1040) that he had provided to the SBA was a true, filed tax return for PMW, when it was not. |
| 13 | April 24, 2022 | A fraudulent Amended EIDL Loan Authorization and Agreement for PMW, submitted by the internet and interstate wires to the SBA, containing material misrepresentations, including the false certification by JOSEPH KAMINSKI that he would use all funds awarded for business purposes and to alleviate the injury caused to PMW by COVID-19. |

All in violation of Title 18, United States Code, Sections 1343 and 1349.

THE GRAND JURY FURTHER CHARGES:

## COUNT 14
18 U.S.C. § 1956(a)(1)
(Money Laundering)

76.    The factual allegations of paragraphs 1 through 9 and

paragraphs 60 through 67 are incorporated here.

77.    From on or about March 8, 2022, to on or about March 9,

2022, in the Middle District of Pennsylvania, and elsewhere, the

defendant,

## JOSEPH KAMINSKI,

knowingly conducted and caused others to conduct financial

transactions affecting interstate and foreign commerce, which involved

the proceeds of a specified unlawful activity, namely, wire fraud, in

violation of Title 18, United States Code, Section 1343, knowing that

the transactions were designed in whole and in part to conceal and

disguise the nature, location, source, ownership, and control of the

proceeds of said specified unlawful activity and that while conducting

such financial transactions knew that the property involved in the

financial transactions represented the proceeds of some form of unlawful activity.

78.    The following transactions, as summarized below, on the dates and in the order reflected below, were each conducted and caused to be conducted by JOSEPH KAMINSKI:

a. On March 8, 2022, a transfer of $30,000 from the account of Individual 1 at Cross Valley Federal Credit Union ending -6412 to the account of JOSEPH KAMINSKI at Cross Valley Federal Credit Union ending -6031;

b. On March 8, 2022, a withdraw of $30,000 from the account of JOSEPH KAMINSKI at Cross Valley Federal Credit Union ending -6031, via a cashier's check drawn on the account in the amount of $30,000 and made payable to Prominent Monument Works (PMW);

c. On March 8, 2022, a deposit of $30,000 into the account of PMW at PNC Bank ending -7341, via the deposit of a cashier's check in the amount of $30,000 drawn on the account of JOSEPH KAMINSKI at Cross Valley Federal

Credit Union ending -6031 and made payable to Prominent Monument Works (PMW);

d. On March 9, 2022, a wire transfer of $30,000 from the account of PMW at PNC Bank ending -7341 to the bank account of a PMW equipment supplier (Astralease).

All in violation of Title 18, United States Code, Sections 1956(a)(1)(B)(1) and 2(b).

THE GRAND JURY FURTHER CHARGES:

## COUNTS 15 THROUGH 24
18 U.S.C. § 1957
(Unlawful Monetary Transactions)

79.    The factual allegations of paragraphs 1 through 9 and

paragraphs 17 through 67 are incorporated here.

80.    On or about the dates set forth below, in the Middle District

of Pennsylvania, and elsewhere, the defendant,

### JOSEPH KAMINSKI,

knowingly engaged in and caused others to engage in the following

monetary transactions by, through, and to a financial institution,

affecting interstate and foreign commerce, in criminally derived

property of a value greater than $10,000, that is, the deposit,

withdrawal, transfer, and exchange of U.S. currency and funds, such

property having been derived from a specified unlawful activity,

namely, wire fraud, in violation of Title 18, United States Code, Section

1343, with each transaction set forth below a separate count:

| Count | Approximate Date | Monetary Transaction |
|---|---|---|
| 15 | August 17, 2021 | Transfer of $49,000 from account of PMW at PNC Bank ending -7341, to account of Sudds 1 LLC at Wells Fargo Bank ending -4557. |
| 16 | August 23, 2021 | Transfer of $11,000 from account of PMW at PNC Bank ending -7341, to account of owner of Sudds 1 LLC at TD Bank ending -5978. |
| 17 | September 2, 2021 | Withdraw of $21,685 from account of PMW at PNC Bank ending -7341, via a cashier's check drawn on the account in the amount of $21,685 and made payable to car auction company. |
| 18 | September 22, 2021 | Withdraw of $15,000 from account of PMW at PNC Bank ending -7341, via a cashier's check drawn on the account in the amount of $15,000 and made payable to Northumberland County Tax Claim Bureau. |
| 19 | December 6, 2021 | Withdraw of $17,538 from account of PMW at PNC Bank ending -7341, via a cashier's check drawn on the account in the amount of $17,538 and made payable to car auction company. |
| 20 | March 8, 2022 | Transfer of $30,000 from account of Individual 1 at Cross Valley Federal Credit Union ending -6412, to account of JOSEPH KAMINSKI at Cross Valley Federal Credit Union ending -6031. |
| 21 | March 8, 2022 | Withdraw of $30,000 from account of JOSEPH KAMINSKI at Cross Valley Federal Credit Union ending -6031, via a cashier's check drawn on the account in the amount of $30,000 and made payable to Prominent Monument Works. |
| 22 | March 8, 2022 | Deposit of $30,000 into the account of PMW at PNC Bank ending -7341 via the deposit of a cashier's check in the amount of $30,000 drawn on account of JOSEPH KAMINSKI at Cross |

| | | |
|---|---|---|
| | | Valley Federal Credit Union ending -6031 and made payable to Prominent Monument Works. |
| **23** | March 9, 2022 | Withdraw of $30,000 from account of PMW at PNC Bank ending -7341, via a cashier's check drawn on the account in the amount of $30,000 and made payable to PMW equipment seller. |
| **24** | May 27, 2022 | Withdraw of $12,500 from account of PMW at PNC Bank ending -7341, via a cashier's check drawn on the account in the amount of $12,500 and made payable to the then-current owner of a bowling alley in Shamokin, PA. |

All in violation of Title 18, United States Code, Sections 1957 and 2(b).

THE GRAND JURY FURTHER CHARGES:

## COUNTS 25 THROUGH 30
15 U.S.C. § 645(a)
(False Statements to the SBA)

81.    The factual allegations in paragraphs 1 through 9 and paragraphs 17 through 67 are incorporated here.

82.    On or about the dates set forth below, in the Middle District of Pennsylvania, and elsewhere, the defendant,

**JOSEPH KAMINSKI,**

knowingly made and caused to be made the following false statements for the purpose of obtaining EIDLs and EIDL advances for PMW, and for the purpose of influencing in any way the action of the SBA in connection with these loans, and for the purpose of obtaining money, property, and anything of value, with each false statement being a separate count:

44

| Count | Approximate Date of False Statement | Description of False Statement |
|---|---|---|
| 25 | May 8, 2021 | An email from JOSEPH KAMINSKI (joeemail53@gmail.com) to the SBA stating falsely that the EIDL funds being sought for PMW were "desperately needed" by the business. |
| 26 | June 29, 2021 | An email from JOSEPH KAMINSKI to the SBA stating falsely that Individual 1 was the "81% owner" of PMW and the person that should get "a credit pull" and that he was only a "19% owner" who should not get a "credit pull." |
| 27 | July 1, 2021 | An email from JOSEPH KAMINSKI to personnel at the SBA stating falsely that he was "not sure how May 20, 1999" became listed in the SBA's system "as the start date" for PMW. |
| 28 | July 21, 2021 | An email from JOSEPH KAMINSKI to the SBA stating falsely that PMW had "9 consecutive months of $0 revenue" in 2020. |
| 29 | March 22, 2022 | An email from JOSEPH KAMINSKI to the SBA stating falsely that since PMW did not start as a business until January 1, 2020, "no business tax history" for 2018 and 2019 exists for PMW and that it is "senseless" for the SBA to request "non-existent business tax history" from him. |
| 30 | April 13, 2022 | An email from JOSEPH KAMINSKI to the SBA stating falsely that the 2020 Federal Tax Return (Form 1040) that he had "uploaded" to the SBA, and which showed "Prominent Monument Works on schedule C" was a filed tax return. |

All in violation of Title 15, United States Code, Section 645(a).

THE GRAND JURY FURTHER CHARGES:

## COUNT 31
18 U.S.C. § 1001
(False Statement)

83.    On or about July 10, 2023, in the Middle District of

Pennsylvania, the defendant,

### JOSEPH KAMINSKI,

did willfully and knowingly make a materially false, fictitious, and

fraudulent statement and representation in a matter within the

jurisdiction of the executive branch of the Government of the United

States, by stating and representing to special agents of the Internal

Revenue Service-Criminal Investigation ("IRS-CI") that he did not know

that an applicant's credit score was a factor considered by the SBA in

determining who would and would not qualify for SBA pandemic loans.

84.    The statement and representation was false because, as

JOSEPH KAMINSKI then and there knew, his unsatisfactory credit

score was both the main basis for the SBA denying his initial EIDL

application for PMW and his motivation for falsely representing to the

SBA on later applications that Individual 1 was the 81% owner of PMW and he was only the 19% owner.

In violation of Title 18, United States Code, Section 1001(a)(2).


THE GRAND JURY FURTHER CHARGES:


**COUNT 32**
18 U.S.C. § 1001
(False Statement)

85.     On or about July 10, 2023, in the Middle District of Pennsylvania, the defendant,

**JOSEPH KAMINSKI,**

did willfully and knowingly make a materially false, fictitious, and fraudulent statement and representation in a matter within the jurisdiction of the executive branch of the Government of the United States, by stating and representing to special agents of IRS-CI that the EIDL funds that he received for PMW were only spent on legitimate business expenses such as inventory and the purchase of equipment.

86.    The statement and representation was false because, as JOSEPH KAMINSKI then and there knew, he had spent significant EIDL funds on purely personal and other non-business purchases.

In violation of Title 18, United States Code, Section 1001(a)(2).

THE GRAND JURY FURTHER CHARGES:

## COUNT 33
18 U.S.C. § 1001
(False Statement)

87.    On or about July 10, 2023, in the Middle District of Pennsylvania, the defendant,

**JOSEPH KAMINSKI,**

did willfully and knowingly make a materially false, fictitious, and fraudulent statement and representation in a matter within the jurisdiction of the executive branch of the Government of the United States, by stating and representing to special agents of IRS-CI that Female 1, whom he had met on a "sugar dating" website and to whom he had given thousands of dollars in EIDL funds, had been given this

money in exchange for her doing online marketing and other work for PMW.

88.    The statement and representation was false because, as JOSEPH KAMINSKI then and there knew, Female 1 did not do work for PMW.

In violation of Title 18, United States Code, Section 1001(a)(2).


THE GRAND JURY FURTHER CHARGES:

**COUNT 34**
18 U.S.C. § 1001
(False Statement)

89.    On or about July 10, 2023, in the Middle District of Pennsylvania, the defendant

**JOSEPH KAMINSKI,**

did willfully and knowingly make a materially false, fictitious, and fraudulent statement and representation in a matter within the jurisdiction of the executive branch of the Government of the United States, by stating and representing to special agents of IRS-CI that a number of other females who had been paid via Cash App transfers from PMW's business bank account, such as "Nina," "Brittany,"

"Taylor," "Madison," and "Angelina," were paid for marketing work or other business purposes.

90.    The statement and representation was false because, as JOSEPH KAMINSKI then and there knew, one and more of these women neither did work for PMW nor had any other legitimate business connection to PMW.

In violation of Title 18, United States Code, Section 1001(a)(2).

A TRUE BILL

JOHN C. GURGANUS
Acting United States Attorney

FOREPERSON

_____
JEFFERY ST JOHN
Assistant United States Attorney

July 29, 2025
Date

50