**THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | |
| **v.** | : | **3:25-CR-199** |
| | : | **(JUDGE MARIANI)** |
| **JOSEPH KAMINSKI,** | : | |
| | : | |
| **Defendant.** | : | |

## MEMORANDUM OPINION

### I. INTRODUCTION

Pending before the Court is Defendant Joseph Kaminski's Motion in Limine to Preclude the Testimony of his Spouse. (Doc. 31).

Trial in this matter is set to commence on November 10, 2026, on the thirty-four (34) counts identified in the Indictment, (Doc. 1), filed on July 29, 2025: Counts One through Thirteen – Wire Fraud; Count Fourteen – Money Laundering; Counts Fifteen through Twenty-Four – Unlawful Monetary Transactions; Counts Twenty-Five through Thirty – Making False Statements to the Small Business Association; and Count Thirty-One through Thirty-Four – Making False Statements.

The Government opposes Defendant's Motion in Limine, but does not identify specific testimony of Defendant's spouse that it intends to offer at trial, and the Government further notes that it is unsure whether Defendant or Defendant's spouse will testify at all. (*See* Doc. 38 at 12). For the reasons that follow, the Court will deny the Motion in Limine, (Doc. 31), without prejudice to Defendant's ability to object to specific spousal testimony.

## II. Standard of Review

"The purpose of a motion in limine is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence." *United States v. Tartaglione*, 228 F. Supp. 3d 402, 406 (E.D. Pa. 2017). A court may exercise its discretion to rule in limine on evidentiary issues "in appropriate cases." *In re Japanese Elec. Prods. Antitrust Litig.*, 723 F.2d 238, 260 (3d Cir. 1983), *rev'd on other grounds sub nom. Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). Nevertheless, a "trial court should exclude evidence on a motion in limine only when the evidence is clearly inadmissible on all potential grounds." *Tartaglione*, 228 F. Supp. 3d at 406. "[I]n limine rulings are not binding on the trial judge, and the judge may always change his mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000).

Further, while motions in limine may serve as a useful pretrial tool that enables more in-depth briefing than would be available at trial, a court may defer ruling on such motions "if the context of trial would provide clarity." *Frintner v. TruePosition*, 892 F. Supp. 2d 699, 707 (E.D. Pa. 2012). Indeed, "motions in limine often present issues for which final decision is best reserved for a specific trial situation." *Walden v. Georgia-Pacific Corp.*, 126 F.3d 506, 518 n.10 (3d Cir. 1997). Thus, certain motions, "especially ones that encompass broad classes of evidence, should generally be deferred until trial to allow for the resolution of questions of foundation, relevancy, and potential prejudice in proper context." *Leonard v. Stemtech Health Scis., Inc.*, 981 F. Supp. 2d 273, 276 (D. Del. 2013).

## III. Analysis

Defendant contends that the statements and testimony of his spouse, Joan Olshefski, should not be permitted at trial due to the marital communications privilege. (Doc. 31 at 2–3; Doc. 32 at 3–6). In support of his motion, Defendant specifically points to two interviews conducted by law enforcement agents on unknown dates with his wife, which "may have referenced confidential marital communications." (Doc. 32 at 2). Defendant asserts "[s]tatement and testimony of Kaminski's spouse, Joan Olshefski…[made] during two proffer sessions with the U.S. Attorney and IRS Case Agents, and any other statements made to law enforcement that, in any way, reference confidential marital communications…are inadmissible due to the marital communications privilege." (Doc. 31 at 2).

Rule 501 of the Federal Rules of Evidence provides in pertinent part that "[t]he common law—as interpreted by United States courts in the light of reason and experience—governs a claim of privilege" unless certain exceptions not applicable here apply. Fed. R. Evid. 501. Thus, the Court will first turn to consideration of the marital privilege by the Court of Appeals for the Third Circuit, lower courts applying Third Circuit precedent, and decisions upon which the Third Circuit has relied.

Two distinct privileges are associated with the marriage relationship.

> The privilege against adverse spousal testimony, which prevents one spouse from being compelled to testify against the other, rests with the testifying spouse, who may choose to waive it. *Trammel v. United States,* 445 U.S. 40, 53, 100 S. Ct. 906, 913, 63 L.Ed.2d 186 (1980). This privilege, designed to

> protect the marriage relationship as it exists at the time of trial, "applies to all testimony of any kind." *See* 2 Wright & Miller, *Federal Practice & Procedure* 2d § 406 (1983). In contrast, the marital communications privilege prevents a testifying spouse from disclosing confidential communications between the spouses. It "reaches only those communications made in confidence and intended to be confidential." *Id.*

*United States v. Ammar*, 714 F.2d 238, 258 (3d Cir. 1983). The marital communications privilege is held by both spouses, including the nontestifying spouse, and can be asserted even after the marriage ends. *United States v. Tartaglione*, 228 F. Supp. 3d 401, 407 (E.D. Pa. 2017) (citing 3 *Weinstein's Federal Evidence* § 505.09 (2d ed. 2016)); *see also United States v. Xi*, 2021 WL 3910749, at *17 (E.D. Pa. Sept. 1, 2021).

*Tartaglione* identified three elements which must be met by a defendant who wishes to invoke the marital communications privilege: the defendant must show that (1) a valid marriage existed at the time of the communication, (2) the privilege is being applied "only to utterances or expressions intended by one spouse to convey a message to the other," and (3) the communication was made in confidence." 228 F. Supp. 3d at 407 (citing *Wolfle v. United States*, 291 U.S. 7, 14 (1934)). Regarding confidentiality, *Wolfle* explained that "[c]ommunications between the spouses, privately made, are generally assumed to have been intended to be confidential, and hence they are privileged; but, wherever a communication, because of its nature or the circumstances under which it was made, was obviously not intended to be confidential, it is not a privileged communication." 291 U.S. at 14.

The Government does not appear to dispute that a valid marriage existed between the Defendant and his spouse at all times leading up to trial, thus satisfying the first prong identified in *Tartaglione.* Neither does the Government appear to dispute that the Defendant seeks to protect communications by Defendant intended to convey a message to Ms. Olshefski, which were made in confidence. *See Tartaglione*, 228 F. Supp. 3d at 407. Instead, the Government argues that an exception to the marital communications privilege applies, because "Kaminski [likely] made one or more communications to Olshefski (related to Kaminski's use of Olshefski as a 'straw owner' of the businesses for which he was seeking EIDL loans) that fairly fall under the crime-fraud exception to the spousal privilege." (Doc. 38 at 10).

In *Ammar*, the government argued that "while marriages involving criminal activity may still be worthy of protection, specific marital communications in furtherance of that criminal activity are not deserving of protection." 714 F.2d at 258. The Circuit Court reasoned that the marital communications privilege "is akin to the attorney-client privilege [which is] also designed to protect the confidences of the communicator [and] has been held not to extend to communications in furtherance of criminal activity." *Id.* (citing *Clark v. United States,* 289 U.S. 1 (1933); *In re Grand Jury Proceedings,* 604 F.2d 798, 802 (3d Cir.1979)). On this basis, the Third Circuit "join[ed] the other circuits in holding that communications between spouses pertaining to ongoing or future criminal activity, are not protected against disclosure by the privilege for confidential marital communications." *Id.*

In *United States v. Hill*, 967 F.2d 902 (3d Cir. 1992), the Third Circuit further addressed the criminal activity exception (also known as the crime-fraud exception) to the marital communications privilege, stating "where certain communications have to do with the commission of a crime in which both spouses are participants, the conversation does not fall within the marital privilege." *Id.* at 911 (citing *United States v. Broome*, 732 F.2d 363, 365 (4th Cir. 1984), *cert. denied*, 469 U.S. 855 (1984); *Ammar*, 714 F.2d at 257–58). The Circuit Court explained the rationale for the exception to the marital communications privilege, stating that

> [t]his exception "reflects the balancing between public interests in fostering open and honest communications between husband and wife and according a sufficient degree of privacy to marital relationships, on the one hand, and the revelation of truth in the attainment of justice, that also are in the public interest, on the other. ... This exception reflects the belief that the greater public good will result from permitting the spouse of an accused to testify willingly concerning their joint criminal activities than would come from permitting the accused to erect a roadblock against the search for truth."

*Hill*, 967 F.2d at 912 n.13 (quoting *United States v. Parker,* 834 F.2d 408, 411 (4th Cir.1987)).

*Hill* further noted that the privilege "extends only to utterances, not acts," *id.* (citing *Pereira v. United States,* 347 U.S. 1, 6 (1954), and "'[t]estimony concerning a spouse's conduct can be precluded upon the spouse's challenge only in the rare instances where the conduct was intended to convey a confidential message from the actor to the observer,'" *id.* (quoting *United States v. Estes,* 793 F.2d 465, 467 (2d Cir.1986). *Hill* also reiterated that "the privilege is inapplicable where a third party is present during a communication between

spouses, because that person's presence 'negatives the presumption of privacy.'" *Id.* (quoting *Parker*, 834 F.2d at 411).

In applying the law to the facts of that case, *Hill* noted that the admissibility of the wife's testimony about conversations related to criminal activity over her husband's objection "is governed by Mrs. Hill's role in Hill's criminal activity." *Id.* at 912. The Circuit Court concluded that the privilege was not violated because Mrs. Hill, even though she was not prosecuted, was at times a joint participant in her husband's criminal activity. *Id.* (citing *Parker*, 834 F.2d at 412). *Parker* noted that "[t]he cases involving the application of this exception to the marital privilege are uniform in their holdings that it applies to communications that have to do with 'the commission of a crime in which both spouses are participants.'" 834 F.2d at 412 (citing *Broome*, 732 F.2d at 365).

Here, in accordance with the reasoning in *Hill* and *Parker*, the Government alleges that "[a]lthough not specifically charged as a co-conspirator, Olshefski [] participated in Kaminski's fraud by signing loan applications that wrongly held her out as the majority owner (and treasurer) of PMW and as the sole owner of an alleged second business." (Doc. 38 at 10–11). While it is true that Ms. Olshefski need not be charged as a co-conspirator, the extent of her actual participation in the alleged crimes is underdeveloped by the parties. In particular, there is not sufficient evidence in the record to show that Ms. Olshefski was a *knowing* participant in the commission of any alleged crime. For example, the Government has alleged Defendant repeatedly forged documents, (*see* Doc. 1 at ¶ 44

(alleging that Defendant "provided to the SBA a false document, signed and dated April2, 2022…held out to the SBA to be duly filed Federal Tax Return")). Based on this allegation that certain documents were forged, the Government will need to establish, at bare minimum, that any purported signature of Ms. Olshefski's on an allegedly fraudulent SBA application is actually hers, and not a forged signature. *See, e.g., Parker*, 834 F.2d at 412 (holding that crime-fraud exception to marital privilege applied because, "[b]y her own admission, [Defendant's wife] was an *active and voluntary* participant in the" alleged crimes (emphasis added)). While relevant case law on this question appears limited, at least one Court has noted that the application of the crime-fraud exception depends on the timing and extent of the uncharged spouse's knowledge. In *United States v. Short*, the Seventh Circuit reasoned that the crime-fraud exception may not apply where a wife "initially prepared [] documents under a misconception that the documents were legal," and she "only gradually became a joint participant, in the sense that she knowingly aided and abetted the conspiracy." 4 F.3d 475, 479 (7th Cir. 1993) (finding admission of privileged marital communications harmless error). Here, the Government has not yet proffered anything to show Ms. Olshefski actively, knowingly, and voluntarily participated, if at all, in the alleged crimes.

Because the Court lacks sufficient detail about the communications at issue, the testimony the Government intends to introduce, the testimony Defendant seeks to preclude, and whether Defendant and his wife will even testify, (*see* Doc. 38 at 12), the parties'

motions regarding spousal privilege will be denied without prejudice to being raised by specific objection at trial.

## IV. Conclusion

Fort the reasons set forth above, Defendant's motion in limine (Doc. 31) will be denied without prejudice to being raised by specific objection at trial. A separate Order will be entered.

Robert D. Mariani
United States District Judge